[Cite as *State ex rel. The Community Press v. Blue Ash*, 2018-Ohio-2506.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE EX REL. THE COMMUNITY PRESS, | : | APPEAL NO. C-170281 |
| | | TRIAL NO. A-1604055 |
| | : | |
| Relator-Appellee/Cross-Appellant, | | *O P I N I O N.* |
| | : | |
| vs. | : | |
| THE CITY OF BLUE ASH, OHIO, | : | |
| Respondant-Appellant/Cross-Appellee. | : | |



Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 27, 2018


*Gradon Head & Ritchey, LLP*, and *John C. Greiner*, for Relator-Appellee/Cross-Appellant,

*Dinsmore & Shohl, LLP, Alex M. Triantafilou, Bryan E. Pacheco* and *Andrew B. Cassady,* for Respondent-Appellant/Cross-Appellee.

**MOCK, Presiding Judge.**

{¶1}     In two assignments of error, respondent-appellant/cross-appellee city of Blue Ash appeals from the decision of the trial court finding that it had improperly refused to provide information requested by petitioner-appellee/cross-appellant The Community Press.  The Community Press, in one assignment of error, cross-appealed the decision claiming that the trial court improperly determined the amount of attorney fees awarded.  We affirm the trial court's judgment in part, reverse it in part, and remand the cause for further proceedings.

### Management Program Information Sought By Media

{¶2}     Judy Office was the owner of Inner Summit.  Inner Summit provides help to individuals seeking to improve their management skills, professional coaching, and development.  She was contacted by the head of the human resources department for Blue Ash and asked to conduct a professional-development exercise called the "360 Feedback Project."  The project was designed by Office to allow senior managers with the city to receive anonymous feedback from their peers and employees in areas of managerial development considered important by the International City/County Management Association, an organization that supports professional city and county managers and employees of local governments.  There were to be seven individuals who received assessments, and each of them was reviewed by six to eight assessors.  Office gave the estimate of between 42-56 possible responders in total.  The employees were told that the surveys were confidential and that no one from Blue Ash would see them.

{¶3}     Office sent the forms to be completed as an attachment to an email that she sent to herself with a blind carbon copy to the assessors of the individual assessment.  Office did not retain any of the emails sent to the assessors, but kept the Word document that she used as the form letter that she pasted into the email body.

2

Those forms were completed by the assessors and returned to Office. Office then compiled the responses into a report that was sent only to the individual being assessed. While most of the reports were verbatim copies of the assessors' responses, Office sometimes edited or summarized comments that gave details that would have led to the individual being able to identify an assessor.

{¶4} No one other than the subject of the report was given a copy of the report. Office said that they were for "individual development." They were not placed in personnel files or retained in any way by Blue Ash or any of its departments. And no action was taken by Blue Ash due to information contained in the reports.

{¶5} In May 2016, a reporter for respondent-appellee/cross-appellant The Community Press learned of the assessments and submitted a public record request for all documents relating to it. Blue Ash tendered a copy of the proposal for the project (which was the only document relating to the "contract" between Inner Summit and Blue Ash, because the details of the process were arranged orally afterward) but tendered no other documents.

{¶6} The Community Press filed suit against Blue Ash seeking a writ of mandamus to compel production of the reports, all the documents that related to the administration of the surveys, and the composition of the reports. The trial court found that the documents were public records subject to disclosure. The trial court also found that Blue Ash improperly deleted at least one email relating to the 360 Feedback Project. While the trial court found that Blue Ash had improperly withheld the documents, it denied The Community Press's request for attorney fees on that claim, finding that Blue Ash's position was "not unreasonable given the case law as it exists." The trial court awarded attorney fees relating to the deletion of the email.

**Mandamus Was Improperly Granted**

{¶7}    In its first assignment of error, Blue Ash claims that the trial court erred when it issued the writ of mandamus compelling the city to produce the documents related to the 360 Feedback Project.  We agree.

{¶8}    "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Cincinnati Enquirer, Div. Of Gannett Satellite Information Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 11.  "In order to be entitled to a writ of mandamus, the relator must establish a clear legal right to the relief prayed for, that respondent has a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law."  *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 633 N.E.2d 1128 (1994).   Relators seeking public records in mandamus, however, need not establish the lack of an adequate remedy at law.  *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.

{¶9}    The Ohio Public Records Act provides that upon request, "all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours."  R.C. 149.43(B)(1).  " 'Public record' means records kept by any public office, including, but not limited to, state, county, city, village, township, and school district units[.]" R.C. 149.43(A)(1).  The term "record" includes "any document * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). " 'Public office' includes any state agency, public institution, political subdivision, or

other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A).

{¶10} The political office is the political subdivision, in this case, the city of Blue Ash. *See* R.C. 149.011(A). The specific documents at issue in this case are not "records" under R.C. 149.011. They do not document: 1) the organization of the city; 2) the functions of the city; 3) the policies of the city; 4) the decisions of the city; 5) the procedures of the city; 6) the operations of the city; or 7) other activities of the city. And they are not something "a government unit utilizes to carry out its duties and responsibilities." *See State ex rel. Beacon Journal Publishing Co. v. Whitmore*, 83 Ohio St.3d 61, 63, 698 N.E.2d 640 (1988), citing *State ex rel. Mazzaro v. Furgusson*, 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990). While they may have assisted the "public officials" (the employees of the city of Blue Ash as defined in R.C. 149.011) in better performing their jobs, this does not make them "records" under the statute.

{¶11} In *State ex rel. Cincinnati Enquirer v. Ronan*, the Ohio Supreme Court addressed the question of when applications for the position of superintendent of the Cincinnati Public School system became "records" and could be obtained through R.C. 149.43. *State ex rel. Cincinnati Enquirer v. Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680, 938 N.E.2d 347. In that case, applicants submitted their materials to a post office box, and they were not retrieved by the district until a specified date. The Cincinnati Enquirer filed a request for a writ of mandamus asking that the materials be made available before that date, arguing that they were available once they had been placed in the post office box. The court found that they were not records at that point. "R.C. 149.011(G) * * * requires more than mere receipt and possession of a document in order for it to be a record for purposes of R.C. 149.43." *Id.* at ¶ 15, quoting *Whitmore* at 64. The court concluded that "until the school

district retrieved the documents from its post office box and reviewed them or otherwise used or relied on them, they were not records subject to disclosure under R.C. 149.43." *Ronan* at ¶ 16.

{¶12}   Since the documents relating to the 360 Feedback Project were not utilized by Blue Ash to carry out its duties and responsibilities, they were not public records subject to disclosure.  The trial court erred when it issued a writ compelling their production.  We sustain Blue Ash's first assignment of error.

### Destruction of Email

{¶13}   In Blue Ash's second assignment of error, it claims that the trial court erred when it determined that it had improperly destroyed documents.  We agree.

{¶14}   R.C. 149.351(A) states that "[a]ll records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or * * * under the records programs" that are established under R.C. 149.33.  R.C. 149.351(B)(2) provides that "[a]ny person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of" R.C. 149.351(A), may commence "[a] civil action to recover a forfeiture in the amount of one thousand dollars for each violation."

{¶15}   The Ohio Supreme Court addressed the purpose of R.C. 149.351, concluding that the legislature's intent in promulgating the statute was to protect and preserve "public records." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 18. A party is aggrieved, therefore, if a document is destroyed that meets the definition of a "public record" and it was destroyed in a  manner other than as provided for by law.  *See State ex rel. Cincinnati Enquirer v. Allen*, 1st Dist. Hamilton No. C-040838, 2005-Ohio-4856, ¶ 15.  Conversely, if the record was not a

6

"public record," the party cannot be aggrieved by its destruction. *See Walker v. Ohio State Univ. Bd. of Trustees*, 10th Dist. Franklin No. 09AP-748, 2010-Ohio-373, ¶ 27.

{¶16} The term "record" includes "any document * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). But R.C. 149.43 and 149.011(G) do not define a public record as any piece of paper received by a public office that might be used by that office. *Ronan*, 127 Ohio St.3d 236, 2010-Ohio-5680, 938 N.E.2d 347, at ¶ 13, citing *Tax Analysists v. United States Dept. of Justice*, 845 F.2d 1060, 1068 (D.C.Cir.1988). The R.C. 149.011(G) definition of "records" has been construed to encompass " 'anything a governmental unit utilizes to carry out its duties and responsibilities * * *.' " *Whitmore*, 83 Ohio St.3d at 64, 697 N.E.2d 640. So, if requested documents are not utilized by the public office, they do not "document the organization, functions, policies, decisions, procedures, operations, or other activities" of the public office and are not public records. *Id.*; R.C. 149.011(G). Therefore, letters written to a judge are not public records if the judge did not rely on those letters when making a decision. *Whitmore* at 64. And, application materials for employment as a school superintendent were not public records until the school board "retrieved the documents from its post office box *and* reviewed them or otherwise used or relied on them." (Emphasis added.) *Ronan* at ¶ 16.

{¶17} The trial court concluded that

Blue Ash destroyed emails and other documents related to this public

contract because Blue Ash did not feel they were public records and no

one relied on them. The records were public records and, whether

relied upon or not, or to what extent, is not the applicable test. * * *

7

The record is unclear as to the number of emails and other documents that were deleted and therefore destroyed. On the record as it exists, the Court concludes that at least one email was not kept, but suspects it to be more. How many more would at this time be speculation.

Contrary to the conclusion reached by the trial court, we conclude that the fact that the documents in dispute were not used by the public office in this case is key to determining whether The Community Press could be aggrieved by their destruction.

{¶18} It appears from the trial court's decision that it concluded that the emails that were sent or received relating to the 360 Feedback Project were public records because they related to the documents generated from the project that were, themselves, public records. But, as we determined in our analysis of Blue Ash's first assignment of error, they were not. Additionally, our analysis is complicated by the fact that it is unclear what single email the trial court determined was a record that had been improperly destroyed. The record is vague on the nature of the emails, but they seem to be limited to transmittal emails which contained attached documents related to the project. Because the documents themselves were not public records, the emails that transmitted them were likewise not public records. Because the emails that discussed the project were not public records, The Community Press cannot be aggrieved by their destruction. *See Barnes v. Columbus Civ. Serv. Comm.*, 10th Dist. Franklin No. 10AP-637, 2011-Ohio-2808, ¶ 27; *Walker*, 10th Dist. Franklin No. 09AP-748, 2010-Ohio-373, at ¶ 27. We therefore sustain Blue Ash's second assignment of error.

### The Community Press Not Entitled to Attorney Fees

{¶19} In its sole assignment of error on its cross-appeal, The Community Press argues that it was entitled to attorney fees for its successful pursuit of the writ of mandamus to compel production of the documents relating to the 360 Feedback

8

Project. The trial court had denied the request, concluding the position that Blue Ash had taken was "not unreasonable given the case law as it existed." But since The Community Press should not have succeeded on its mandamus claim, it was not entitled to attorney fees. *See Cincinnati Bd. of Edn.*, 99 Ohio St.3d 6, 2003-Ohio-2260, 788 N.E.2d 629, at ¶ 11. The assignment of error is overruled.

### Conclusion

{¶20} The portion of the trial court's judgment granting the request by The Community Press for a writ of mandamus compelling the production of documents related to the 360 Feedback Project and determining that The Community Press was aggrieved by the failure of Blue Ash to retain an email related to the project is reversed. The portion of the trial court's judgment denying the request of The Community Press for attorney fees is affirmed, though for different reasons than relied upon below. The cause is remanded to the trial court for entry of judgment in accordance with this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

CUNNINGHAM and MYERS, JJ., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.